Good morning, Your Honors. Jesse Kaplan for Appellants. It's hard for me to know where to put my finger down here, but let me put it down on the fact that the headache form filled out by Mr. Brancaccio's treating physician, which would result in disability, was simply not mentioned in the administrative law judge decision. I don't know how you can ignore that. And then, of course, there are a number of other, well, a few anyway, other forms which also were not mentioned, but at least to some extent the decision might be said to respond to, but I don't know what you can say when you have a treating physician form provided by the state agency designed to elicit the kind of information that's needed to make disability decisions and it simply is not addressed. I think their argument is that it doesn't constitute a treating physician opinion within the meaning of Social Security law. What's your response to that? Well, I disagree. It says that he has headaches two or three times a day, that they last for two or three hours, and I think it also has a box that says they prevent his ability to It refrains from addressing the ultimate issue of disability, which is another standard objection that the doctor just says, well, the patient is disabled. No, this gives you the information you need to infer disability. Those are specific limits and there's objective information associated with it also, photophobia, phonophobia, whatever else is on the form. It's a form designed, it's a form provided by the state agency designed to elicit the kind of information that is needed to make a disability decision regarding headaches. That's also potentially even a There's, I thought about trying to count up the number of errors that are arguably present in the administrative law judge decision and I think it's easy to feel that there's, you know, to try to rehabilitate the errors and some of them may be rehabilitatable, but, and I think part of that is that there's a natural inclination to look at the residual functional capacity found for Mr. Brancaccio and look at his age and say, well, you know, this was a very generous residual functional capacity, but unfortunately he wasn't found disabled. However, that residual functional capacity comes from the consultative examiner who did not know really what was going on with Mr. Brancaccio because he wasn't given any information. So the other way of looking at that, it's occurring to me that I didn't reserve any time. Can I reserve some time? I'll reserve two minutes, I guess, looking at the clock right here. But the other way of looking at that, I shouldn't have interrupted myself right at that moment, is that if Mr. Brancaccio came this close to being found disabled, so to speak, by that consultative examining doctor without that doctor knowing what was really going on with his back, then any, you know, then he probably should have been found disabled. It's hard to believe that the doctor's opinion would not have changed if he hadn't known the rather alarming information that imaging evidence actually gives to him. So what are you asking us to do, to remand to the agency with an instruction to attach appropriate weight to the form filled out by Dr. McAlpine? Well, this is an interesting, I mean, this is a contentious issue right now in terms of exactly what you're supposed to do in reviewing the overall evidence of the case. But I think I have to stand here and tell you that form says he's disabled. I don't know why it shouldn't be remanded for benefit. I see. So why is it clear enough, even assuming that we agree with you, that the ALJ improperly disregarded the form filled out by the treating physician? Why is it clear enough that this is a simple award of benefits case instead of a remand? I'm not sure how to take your question. I'm asking you to support your argument. Well, okay. There's no countervailing evidence in the record regarding his headaches. And in fact, if you look at the hearing testimony, Mr. Brancaccio testified about his headaches and he testified very closely with what that form says. So there's no reason for serious doubt about his headaches to be found in the record to use the standard language from Garrison. I don't know what else to say. I realize that there'll be a certain reluctance to remand because of headaches, but headaches get short shrift. In theory, headaches can be a step three basis, and the evidence is even there for that. The standard analogy is to the seizure listing. There is, or used to be, I think there still is, a Social Security memo that says that's what you look at. And this easily meets either one of the seizure listing criteria when, by way of analogy. Counsel, I'm looking at Dr. McAlpine's opinion, and it says that the headaches interfere with his ability to work. He checked the box, yes. And it says the duration is two to three hours. You know, and it may well be that, you know, if that information had been presented to the vocational expert, that the conclusion would be that he's disabled. But what is it about this form by itself that compels that conclusion, such that a remand for an award would be appropriate, rather than a remand for further consideration by the vocational expert? Well, I think you're correct insofar as there's no legal authority, no Social Security ruling, nothing that says, well, if you can't work, you know, a quarter to a third of a workday that you're disabled. So, you know, that's a kind of standard form of vocational expert testimony that gets people disability benefits. So I suppose, you know, it's common sense. I guess my time just expired. But there does remain what I just said, the step three disposition based on that. It's well within the, that's where you, and I guess you could reason, you could write it, if you were an administrative law judge, you could write a decision with reference to that, to step three, to the seizure disorder listings, and then say, but I'm deciding this at step five instead. Thank you, Counsel. May it please the Court. Mara Bratt for the Commissioner of Social Security. I'd like to start out with the headache issue. Our position is that this is a harmless error. We do think it's an opinion, but it was not probative because it's not supported. There's just no backup in the record. We need to rely on objective evidence over time to show that he had disabling headaches for at least 12 months or expected to last for 12 months. McAlpine's form is very sparse. He doesn't provide any narrative. He doesn't provide any information about what it means to say that he has headaches for two to three hours a day and that it interferes with his ability to work. We don't know if he could do some work during that time. It's just a question. And looking back into the record, we don't see any headache logs. We don't see treatment over time showing that he continues to complain of headaches. We don't see what treatment modalities or anything were tried over the course of time. And in fact, there are citations in the record where he denies having headaches. So we don't know that it's consistent and persistent such that it would be disabling. And without that information, this opinion, this single page on its own, is simply a conclusory. And to the extent it can be considered an opinion on disability, I disagree. I don't think it shows disability. But to the extent it can be, that's an issue reserved to the commissioner because the commissioner has to consider the entire file. Did the ALJ simply miss Dr. McAlpine's form? Did he simply overlook it? I don't think so. I think that there is enough evidence in here to show that he considered the treatment record as a whole. Did he mention Dr. McAlpine? He did mention it. And I'm looking at, having trouble figuring out, I've got page 795. It's page 8 of the ALJ's order. Okay, the ALJ's, yep. The last sort of full paragraph before Arabic 6, finally given the claimant's allegations, are you with me? Yes. Of totally disabling symptoms. I expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. Yet a review of the record in this case reveals no restriction recommended by the treating doctor. That suggests that he dismissed it. That's not how I read it, Your Honor. I think that means to say that that form doesn't provide anything specific. It doesn't provide, like if you have a headache restriction typically, it says for a certain part of the day at work he can't do complex tasks or something like that. And there's nothing specific like that in there. And I think that's what he meant. I think your suggested reading is possible. But in the absence of any mention at all of anything from Dr. McAlpine in the ALJ's order, it leads me to think that he might have just missed it. I guess it's possible that he missed it. But that's not how I read it. Because he generally speaking, when you have an opinion in letter or form from a treating physician, you have to give specific reasons for rejecting it. You've given us some reasons for rejecting it today. But that's not in the ALJ finding. No, you're right. He doesn't mention it. And that's why I'm arguing that it's harmless error. And what I would rely on for that is the Marsh case where we said that you can find harmless error when there's rejection of a treating physician's opinion without sufficient reasons. And it seemed like the court was seeing there's sort of a scale there. It's easier to find a harmless error if it was less consequential. And without any support at all, there's really, there are no treatment records from McAlpine supporting his own opinion. And there's no narrative in there. And we don't even really know what he's saying. And I would argue that that's not correct. He's using a form that was supplied by not his office, somebody else, I expect. So he says he hasn't been to work for two years. I agree with you. It doesn't say there are, he's imposing restrictions on activities. He said he can't work, basically. Well, he says that he, I think when you look at that form, it says he hasn't worked for two years. They're asking him to estimate how often it interferes with his ability to work. And he's basically saying, I can't say because he hasn't worked for two years. We know he hasn't worked for two years. That's why we're here, trying to determine if it's because he's disabled or, you know, if that justifies an award or benefits. I mean, it's an odd form in the sense that does it interfere with his work, ability to work? Yes. And it says, if yes, average number of days missed per week. And he said no work in two years. Right. And that seems to me, I think that means saying he's totally disabled. Yeah, I mean, I meant that. That's one. You can read it that way. And that's not how I read it. And I'm actually not clear. It doesn't look to me like an agency form. I had read it like that. And I'm not sure one way or the other, whether it was, I don't know that that matters actually to the decision at all. But I just, I'm not sure that's the case. I also, do you have any further questions on the headache issue before I move on? Okay. I wanted to go back to what counsel was saying about the CE. The CE, the consultative exam by Van Kirk is the most He tested the claimant's functioning, notwithstanding the limitations that the claimant has. And I think the counsel is arguing that he should have looked at recent MRIs showing lumbar stenosis and significant changes in lumbar spine. And he didn't have that in front of him. But he was actually examining what the claimant could do. And that is what the ALJ has to determine to find if the person is disabled, what he can still do despite having a severe lumbar impairment. And he saw that although he walked slowly, he could do all the gait tests. And that he had normal motor strength, no weakness, and normal neurological testing. And based on all of that information, he drew the conclusion that he could perform a reduced range of sedentary work. I don't think I have anything further. Okay. Thank you very much. Thank you. Let me just remind you that this isn't the only treating physician form that was totally ignored by the decision. Actually, it's just the one that can result in remand and even gone into. But there's the DMV form that was filled out which talks about problems with the lower extremities in order to get a DMV placard. There's a state disability form. And there's simply, I mean, I argue at some length about what a medical opinion really is and who's entitled to give it. But the form doesn't place any restrictions on his activity, does it? You're talking about one or another of the other forms? No, I'm talking about the primary form. We're talking about the headache form. I mean, there's no, he's restricted from X, Y, or Z. You know, in all my years of practice in this field, I've never actually dealt with the concept of headaches or approached headaches from the perspective of being unable to deal with complex tasks. There may be a reason for that because that's not going to get you disability benefits ordinarily unless you're into a higher, into one of the favored age categories and you have, you know, skilled or semi-skilled work background and things like that. The standard doctrine, including in Social Security's own information about how to analyze headaches is, as I say, the analogy to seizure disorder and the percentage of the work day and work week and so on that you're not going to be able to work. Let me ask you this, not just about the form, but about Dr. McAlpine. What evidence is there in the record as to the nature of the relationship? I understand that the form says treating physician. What other evidence do we have about the nature of the relationship between Dr. McAlpine and your client? Well, there's, he was his treating physician before he went to Kaiser, as I read the record, and one of the things that I say should be, should have been construed as an opinion, although it has no specific functional limitations, is the flowery language which is, even in the excerpts I presented about, this is a very young man with just a, I forget exactly the language, but just a horrible looking set of MRIs and so on, and we're going to do our best to save him without putting him through surgery, which, if I can, I guess I do have a little bit of time, but if I can... You're over your time. Oh. You're a minute 40 over your time. Oh, okay. Okay, I've got the answer. Thank you. Thank you for your argument. Case just argued be submitted for decision.
judges: Thomas, W. Fletcher, Miller